[817 NYS2d 49]

In the Matter of ROBERT J. PAPE, JR., a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 20, 2006

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Mady J. Edelstein* of counsel), for petitioner.

*Seiff Kretz & Abercrombie* (*Eric A. Seiff* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Robert J. Pape, Jr. was admitted to the practice of law in the State of New York by the Second Judicial Department on February 25, 1981 and, at all times relevant herein, maintained an office for the practice of law within the First Judicial Department.

This Court, by order entered June 17, 2004, previously suspended respondent, on an interim basis, pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii), based upon sworn admissions of professional misconduct, including false billings, his failure to cooperate with the Departmental Disciplinary Committee, as well as other uncontested evidence of serious professional misconduct in the form of an auditor's report and other documentation (*see* 10 AD3d 40 [2004]).

The Committee now seeks an order, pursuant to 22 NYCRR 603.4 (d), confirming the findings of fact and conclusions of law set forth in the Hearing Panel's determination and imposing the sanction of disbarment. Respondent states, through counsel, that he takes no position with respect to the Committee's petition.

Respondent was served with a notice and statement of charges on November 22, 2004, alleging five violations of the Disciplinary Rules: Charge One asserts that by submitting false and fraudulent expense vouchers, totaling approximately $184,000, and by receiving reimbursement from the firm for personal expenses, respondent intentionally engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3); Charge Two alleges that by failing to maintain accurate records at the time he submitted the false vouchers, and by failing to provide accurate financial records to the firm so that the firm could maintain accurate records of receipts and disbursements and to account to clients who were wrongfully charged, respondent violated DR 9-102 (d) (22 NYCRR 1200.46); Charge Three asserts that by failing to provide bills and statements to the Committee when requested, as part of their investigation, he failed to cooperate with the Committee in violation of DR 1-102 (a) (5); Charge Four asserts that by failing to provide accurate records to permit the firm to reimburse or credit clients

who were wrongfully charged due to his fraudulent vouchers, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation toward his clients and the firm in violation of DR 1-102 (a) (4); and Charge Five alleges that by reason of the foregoing charges, respondent engaged in conduct that adversely affected his fitness to practice law in violation of DR 1-102 (a) (7). On February 15, 2005, respondent submitted an answer denying the charges.

Respondent was an equity partner at the law firm Putney, Twombley, Hall & Hirson, LLP when he was discharged in September 2002. A disciplinary investigation was thereafter commenced in December 2002 based upon respondent's self-report and the firm's correspondence, accompanied by an auditor's report, notifying the Committee that respondent had converted approximately $45,000 by submitting false expense and petty cash vouchers for purported client and firm-related expenses. Respondent subsequently appeared for a deposition, at which time he admitted that approximately $150,000 of the submitted expenses were for his own personal debts, and that he had not turned over financial records requested by the firm.

A hearing was conducted before a Referee on February 28, 2005 and on March 2, 2005, after which the Referee sustained all five charges and recommended respondent be disbarred. The Referee, in reaching his conclusion, noted, inter alia, that respondent:

> "[s]howed a brilliance in the way he expanded the 'double dip' system. The usual way is to sign a food check using a credit card and then take the restaurant check to the firm bookkeeper and receive reimbursement; then when the credit card bill comes, the double dipper submits it and gets a second payment. The scheme created a host of different ways to defraud, i.e., billing two clients when neither was involved; billing a non-existing client billing two different clients when no evidence of appointments were in any diary or calendar. . . .

> "[Respondent's] devious activities are so numerous there is no need for this Court to dwell any further, i.e., the use of his own word processor so that the firm's accounting system was circumvented; zeroing out an account of a client (with credit still belonging to the client) and having the balance credit his credit

charge card . . . His diverse activities in his cheating scheme seem endless."

A Hearing Panel heard oral argument on July 19, 2005 and, by a report dated November 30, 2005, recommended affirming the Referee's report, including the recommended sanction of disbarment.

It is well settled, "virtually without exception and absent extreme mitigating circumstances, that attorneys such as respondent who have intentionally converted client funds have committed serious professional [mis]conduct which warrants the sanction of disbarment" (*Matter of Schmell*, 27 AD3d 24, 27 [2006]; *see also Matter of Blumstein*, 22 AD3d 163 [2005]), regardless of the intent to restore, or the actual restoration of funds (*Matter of Schmell*, 27 AD3d at 27; *Matter of Nitti*, 268 AD2d 41 [2000]).

In this matter, respondent systematically, through the use of a variety of different methods, converted approximately $184,000 of client and firm funds for his own personal use over a five-year period, which only ended when his acts finally drew suspicion and were uncovered. Moreover, respondent's offerings in mitigation do not present any "extreme" circumstances, and are simply insufficient to explain his intricate pattern of deliberate thefts.

Accordingly, the Committee's petition should be granted, the findings of fact and conclusions of law of the Hearing Panel confirmed, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York and his name stricken from the roll of attorneys, effective immediately.

FRIEDMAN, J.P., MARLOW, SULLIVAN, NARDELLI and WILLIAMS, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.